JON T. FRYE and DAVID M. VAUK, ET UX., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frye v. Commissioner
Docket Nos. 3832-85, 3833-85.
United States Tax Court
T.C. Memo 1987-105; 1987 Tax Ct. Memo LEXIS 101; 53 T.C.M. (CCH) 226; T.C.M. (RIA) 87105; February 23, 1987. John McGown, Jr., for the petitioners. Christine V. Olsen, for the respondent. SHIELDS
MEMORANDUM OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Addition to Tax
Docket
Section 6653 (a)
Petitioner
Number
Year
Deficiency
(1) and (2) [1]
Jon T. Frye
3823-85
1981
$6,407
$320 plus 50% of
interest on
underpayment of
$6,407
1982
16,963
$848 plus 50% of
interest on
underpayment of
$16,963
David M. and
3833-85
1981
7,832
$392 plus 50% of
Constance J. Vauk
interest on
underpayment of
$7,832
1982
4,594
$230 plus 50% of
interest on
underpayment of
$4,594
*102 After concessions, the issues remaining for decision are: (1) whether the sale of goodwill by Jon T. Frye and David M. Vauk to their restructured partnership should be recognized for income tax purposes; (2) whether respondent's proposed adjustments to Frye's 1981 return constituted a second inspection which is prohibited by section 7605(b); and (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2). This case was submitted fully stipulated under Rule 122. The stipulation of facts and exhibits associated therewith are incorporated herein by reference. All of the petitioners resided in Caldwell, Idaho at the time their petitions were filed. Hereinafter the word petitioners in the plural will refer to Jon T. Frye and David M. Vauk, both of whom are certified public accountants. In 1972, Frye's accounting firm, Dunn & Frye, hired Vauk as a staff accountant. In the summer of 1976, Frye bought Dunn's interest *103 in the firm and thereafter operated the accounting practice as a sole proprietor until 1977 when he sold a half interest in the firm to Vauk. From 1977 to 1980 they operated the firm as equal partners in the partnership name of Frye & Vauk. In late 1980, Frye and Vauk decided to restructure their partnership. Consequently, on January 4, 1981, the partnership transferred all of its assets and liabilities to its partners with Frye and Vauk each receiving an undivided one-half interest in the assets including the good will of the old partnership. The next day, January 5, 1981 Frye organized a corporation known as "Jon T. Frye, Chartered," and transferred to the new corporation his one-half interest in the assets other than goodwill and all of the liabilities that he had received from the old partnership. On the same date Vauk also organized a new corporation "David M. Vauk, Chartered," and transferred to it his one-half interest in the assets other than goodwill and all of the liabilities received from the old partnership. The two corporations then formed a new partnership called Frye & Vauk, C.P.A.'s and transferred to the new partnership the corporate assets and liabilities in *104 exchange for partnership interests. Petitioners were thereafter employed as accountants by the new partnership. By separate sale contracts also entered into on January 5, 1981, petitioners also purportedly sold to the new partnership the goodwill which they had received from the old partnership. According to the sale contracts, each petitioner was to receive $146,600 for his interest in the goodwill. The price was equal to 125 percent of the firm's estimated billings for 1981. Under the contracts the total purchase price of $146,000 was to be paid to each petitioner in 10 equal annual installments of $14,660 plus interest at the rate of 12 percent per annum. In 1981, each petitioner received $14,660 pursuant to the goodwill contracts. Frye reported $12,857 of his $14,660 as long term capital gain and Vauk reported $7,160 of his $14,660 as long term capital gain. [2] For 1981, Frye and Vauk also reported $12,458 and $12,459, respectively, as compensation from the partnership. No gain or loss was reported in 1981 from the liquidation of the old partnership or the formation of the corporations. *105 In 1982, Frye received and reported $57,092 of principal and $7,000 of interest pursuant to his goodwill contract, and Vauk received and reported $45,635 of principal and $7,500 of interest on his goodwill contract. Frye reported $50,070 of his principal payment as long term capital gain, and Vauk reported $18,625 of his principal payment as long term capital gain. For 1982, Frye and Vauk also received and reported $3,300 and $18,000, respectively, as compensation from their corporations. Frye's 1981 return was audited by respondent in late 1982. At the conclusion of the audit a "no change" letter was issued. Frye's 1982 return and Vauk's returns for both 1981 and 1982 were audited in 1984. This 1984 audit did not require an additional inspection of Frye's separate books of account for 1981 even though adjustments were proposed with respect to his return for 1981 as a result of the audit in 1984. Sale of Goodwill
Respondent contends that the purported sales of goodwill to the new partnership should not be recognized for income tax purposes. He argues that the sales lacked economic substance and were entered into solely to enable petitioners to receive distributions *106 from the new partnership at capital gain rates rather than as ordinary income. In the consideration of this issue we must not only examine the documents and surface transactions involved, but we must also examine their economic realities. Weyl-Zuckerman & Co. v. Commissioner,23 T.C. 841, 847 (1955), affd. per curiam 232 F.2d 214 (9th Cir. 1956). In other words, we are required to look beyond the "superficial formalities of a transaction to determine the proper tax treatment." Blueberry Land Co. v. Commissioner,361 F.2d 93, 101 (5th Cir. 1966), affg. 42 T.C. 1137 (1964). Labels, semantic technicalities, and formal documents do not necessarily control the tax consequences of a given transaction. Instead, we are concerned with the economic realities of a transaction and not just the form in which it was cast by the parties. Frank Lyon Co. v. United States,435 U.S. 561, 572 (1978). Moreover, transactions which are devoid of economic substance and are engaged in solely to acquire tax benefits should be disregarded, *107 Knetsch v. United States,364 U.S. 361 (1960); Grodt & McKay Realty, Inc. v. Commissioner,77 T.C. 1221 (1981); Derr v. Commissioner,77 T.C. 708 (1981). The determination of whether a given transaction or entity lacks economic substance is a factual question that must be decided within the unique parameters of the particular case [United States v. Cumberland Public Service Co.,338 U.S. 451 (1950)], and where as here, respondent has determined that a particular transaction has no economic substance his determination is presumptively correct and petitioners have the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933). Rule 142(a). Additionally, where, as here, all of the entities involved in a transaction are controlled, either directly or indirectly, by the same parties we are required to closely scrutinize the transaction in order to determine whether it has substance. Bixby v. Commissioner,58 T.C. 757, 776 (1972); Investors Diversified Services, Inc. v. Commissioner,39 T.C. 294, 306 (1962), affd. 325 F.2d 341 (8th Cir. 1963). *108 With the above principles in mind we have carefully reviewed the entire record before us and are satisfied that there was no economic substance to the purported sales of goodwill and that such transactions were entered into by petitioners solely for the purpose of converting ordinary income into capital gains. First, the transfers of goodwill upon the liquidation of the old partnership and the subsequent sales to the new partnership did not alter petitioners' economic relationship to the goodwill. Both before and after, each petitioner owned a half interest in the goodwill either directly or through his wholly-owned corporation. Secondly, petitioners offered no convincing reason as to why the goodwill was sold rather than transferred along with the other assets of the old partnership. Thirdly, given the amounts received by petitioners as partnership compensation during 1981 and 1982, it is apparent that the payments for goodwill were merely a substitute for wages, i.e., ordinary income and not capital gains. We conclude therefore that respondent is correct in his determination that the purported sales of goodwill cannot be recognized for income tax purposes. Second Inspection
*109 Frye contends that respondent is prohibited from making the proposed adjustment to his 1981 return by section 7605(b), which generally permits respondent to inspect taxpayer's books of account only once unless respondent notifies the taxpayer that a second inspection is necessary. His argument must fail however, because the record contains no evidence that his books of account for 1981 were inspected twice. Instead it clearly appears that the 1981 adjustments arose automatically from the facts disclosed by the audit of Frye's 1982 return and/or the 1981 and 1982 returns of Vauk. Additions to Tax
Respondent's determination that petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) is also presumptively correct, and the burden of proving that the determination is erroneous is upon petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). However, petitioners offered no evidence which tended to show that they were justified in believing that the purported sales of goodwill would be recognized. To the contrary, *110 as experienced accountants, petitioners knew or should have known that they could not convert ordinary income into capital gain through transactions which were completely devoid of economic substance. Therefore, respondent's determination with respect to the additions to tax under section 6653(a)(1) and (2) is sustained. To reflect the foregoing as well as the concessions of the parties Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Frye reported this portion of the payment because his gross profit ratio from the sale allegedly was 87.7 percent, which was based on a selling price of $146,600 and a basis in the goodwill of $18,000. Likewise, Vauk claimed a gross profit ratio of 48.84 percent, which was based on a selling price of $146,600 and a basis in the goodwill of $75,000, the amount he had paid for goodwill upon his purchase of an interest in the old partnership.↩